NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—
April, 1882.

## BUSHNELL *v.* DRINKER.

### *In the matter of the estate of* GILES BUSHNELL, *deceased.*

The testator, by his will, bequeathed to trustees $65,000, to be invested by them on bond and mortgage, directing them to collect the interest and pay the same to testator's son, C., for life; and he bequeathed the principal and interest thereof, on C.'s death, to C.'s children, "to be paid over and equally divided" among them, at the majority of the youngest survivor of them. The will was proved in 1862. C. died in 1880, leaving him surviving his only living child, who petitioned for payment of his legacy, alleging a demand upon, and a refusal to pay by, the trustees. It appeared, on a reference, that the trustees had invested the fund as directed by the will, and that, the same having depreciated without their fault, they tendered the securities, etc., belonging thereto to the petitioner, who refused to receive the same, claiming to be entitled to $65,000, in full, as a demonstrative legacy.

*Held,* that the intent of testator, as manifested by the clause providing for an accumulation of interest in case C. should leave a minor child, was that the identical fund, which furnished a life income to C., should, after the latter's death, pass to his children; and that the trustees were not bound to supplement such fund out of the body of the estate, in a sum sufficient to make the value of petitioner's interest $65,000.

The referee having found that the trustees had made an improvident investment of a portion of the trust funds, for which the petitioner might hold them answerable; and it appearing, from documents on file, that, upon an accounting by them, in 1879, which petitioner was cited to attend, a decree was made settling their account and allowing them full credit for the funds invested in the manner questioned:—*Held,* that such decree was conclusive against petitioner in the proceeding at bar.

THIS was a petition by Giles F. Bushnell, a grandson of decedent, to compel John Drinker, and another, trustees under decedent's will, to pay a legacy. The fifth clause of testator's will was as follows : "I give and

bequeath to my said trustees, and the survivors and survivor of them, the sum of sixty-five thousand dollars, to be taken from my bonds and mortgages and personal estate, in trust, nevertheless, that my said trustees invest and keep the same invested in good bonds and mortgages, on real estate worth at least one-third more than the amount loaned thereon, and have and keep the buildings thereon, if any, well insured, and take assignments of the policies of insurance, and collect and receive the interest of that sum so invested, and pay the same to my son Charles Ira Bushnell, in semi-annual payments during his natural life, and, at his death, I give and bequeath the principal and interest thereof to the children of my said son Charles Ira Bushnell, to be paid over and equally divided between them, when the youngest surviving child of my said son attains the age of twenty-one years."

The will was admitted to probate in September, 1862. Charles Ira Bushnell, the immediate beneficiary under the clause quoted, died in September, 1880. His son, Giles F. Bushnell, survived him, and was the petitioner in this proceeding. His daughter, the only other child he ever had, died without issue, and before the death of her father.

The petition was filed November 12, 1880. It alleged that Giles F. Bushnell became entitled, at his father's death, to a legacy from his grandfather's estate of $65,000, and that the trustees under his grandfather's will had refused to pay it.

The trustees answered that a tender had been made, to petitioner's attorney, of all the securities and property to which the petitioner had become entitled; that one

piece of property so tendered was a house and lot at No. 228. East 128th street, which petitioner, through his attorney, had refused to receive. In the year 1870, the trustees had lent the sum of $6,000, from the Charles I. Bushnell trust fund, and had taken as security a mortgage upon the premises in question. No interest had been paid upon this mortgage since 1875, and after a time it had been foreclosed ; the property had been purchased by the trustees for $4,300, and a deficiency judgment had been entered against the mortgagor, for the sum of $3,860.88.

Upon the issues thus joined by petition and answer, a reference was ordered in January, 1881. The referee filed his report February 24, 1882, and the whole matter came before the Surrogate for determination.

G. S. & J. H. STITT, *for petitioner.*

MAN & PARSONS, *for trustees.*

THE SURROGATE.—First. What are the rights of the petitioner under the will? According to the claim of the executors, the testator intended that the identical fund which furnished a life income to his son Charles, should, after the death of the son, pass to the children who survived him. If this view be correct, it is of course immaterial whether, in the lapse of years, the value of such fund has grown, or has dwindled, or has remained unaltered. The transfer, to this petitioner, of the very trust estate which afforded an income to his father, whether the same is worth $65,000, or more or less, will fully satisfy the testator's bequest.

Now, what is the alternative, if this be not accepted as the true reading of the will, but if, as is claimed by

petitioner, the trustees are bound to supplement the trust fund out of the body of the estate, in a sum sufficient to make up the value of his interest to $65,000 ? It seems to me that to allow such a claim would involve a very forced interpretation of this will. It would be to construe it precisely as if it had given to Charles I. Bushnell, during his life-time, the income of $65,000, and had given to his children a separate and distinct legacy of a similar amount, payable upon the death of their father, and the attainment of his majority by the younger child.

In other words, the petitioner, to be consistent in his claim, must insist that whatever he takes under the will really comes out of the body of his grandfather's estate, and is in no manner dependent upon, or affected by, or associated with the life estate of his father. If this be so, it is hard to understand why the testator provided that if Charles should die, leaving a minor child, the trustees should continue, until that child had become of age, to keep invested as a distinct trust, the fund which had afforded his father a life income.

It seems to me very evident that the decedent had just such intentions with respect to his child and grandchildren, as find expression every day in testamentary papers. He designed that his grandchildren should enjoy full and absolute possession of that very property of which their father, in his life-time, had enjoyed the use.

The cases of Giddings *v.* Seward (16 *N. Y.*, 365), and Pierrepont *v.* Edwards (25 *N. Y.*, 128), are cited by petitioner's counsel, as authority for the claim that this will gives to Giles F. Bushnell a demonstrative legacy, the full amount of which must, at all events, be paid to

the legatee, whatever lot may have befallen the fund which yielded a life interest to his father. I cannot find that any such purpose is disclosed by the language of the fifth clause of this will, whether considered by itself or in connection with the other parts of the instrument. I hold, on the contrary, that if, as directed by the testator, the trustees set up a fund of $65,000 during the life of his son Charles, and have kept the same invested as the will directs, they will now discharge their full duty to this petitioner by delivering that identical fund into his hands.

Second. Certain evidence was given before the referee, which is claimed to justify his finding that, among the various investments of the trustees, the 128th street loan was an improvident one, for which the petitioner may hold them answerable. The trustees insist, on the other hand, that none of their investments can here be the subject of contest, because the accounts which include them have been long since settled by the decrees of this court. To this it is objected that these decrees are not binding upon this petitioner, because he was not a party to the proceedings of which they were the culmination.

In reply, it is urged that, as his father was then alive, there was no need of citing the petitioner, who had at that time only a prospective and contingent interest in the estate, to attend these accountings. The records of this court furnish a better answer to this objection, disclosing, as they do, certain facts which counsel on both sides seem to have forgotten.

In March, 1867, upon the petition of Ann Bushnell, executrix of Giles Bushnell's estate, a citation was

issued to divers persons interested, to attend her final accounting. Among others, duly cited, was this petitioner, as is shown by affidavit on file. It appears, by this accounting, and the decree entered thereon in January, 1869, that certain bonds, mortgages and other securities, in the sum of $65,000, had been allotted and set apart to the testamentary trustees for the benefit of Charles I. Bushnell.

It also appears, by affidavit on file, that this petitioner, among others, was duly cited to attend a subsequent accounting of the trustees, and that by decree of April 15, 1879, their account was settled, and they were allowed credit touching the 128th street investment, in the sum of $8,160.88, whereof $4,300 was for the amount paid by them on the foreclosure sale, and $3,860.88 was for the deficiency judgment. No application has been made for setting aside or modifying these decrees, either as respects these matters or any others.

They must, therefore, as it seems to me, be deemed conclusive against this petitioner and decisive of the present controversy.

Decreed accordingly.